Good morning, Your Honors. My name is Abdul Kanari and I represent the petitioner in this case. Your Honors, Hilda Sanchez has established that her imputed political opinion was at least one central reason for her persecution. She has also established that the government of El Salvador was unable and unwilling to protect her. As a result, she is presumed to have a well-funded education. Because of that, the burden shifts to the government to prove fundamental changes in the circumstances or in the alternative internal relocation. In this case, the government was unable to prove either. And as a result, and because of it, we ask this court to reverse the decision of the BIA and of the IG. Here, the facts are as follows. In November of 2013, Mr. Sanchez came home and found an MS-13 insignia on the outside wall of her house. And when she saw that, she was very mad. As a religious person, she said, I will not stand for this. If I let this one go, it means I am for the gang and I am against God. And she called upon her brother-in-law to help her clean up the wall. And as soon as she did that, a couple of days later, two MS-13 gang members showed up and said, first of all, two days later they showed up. Second, they parked their car right there by the wall. And third, they were pointing at the wall when they were talking to her. And they said to her, what we do, nobody gets it undone. Then they threatened her. So, counsel, considering those facts, the immigration judge and the board affirmed that that may have reflected some disrespect of the MS-13 gang. But it didn't rise to the level of a political opinion. It wasn't part of any organized political activity. I understand arguments both ways on that. We could debate that. But isn't the fundamental point whether or not the agency, if it requests remand, when Congress has given the agency the responsibility for the immigration issues like this, whether we let them remand the case for reconsideration if they think there's additional work that could be done. Both the Supreme Court and the D.C. Circuit have cases that talk about that. It seems like it's a pretty broad deference that we provide for that. Why wouldn't we do that?  In general, when the board errs, this court should remand. But this is not an invariable rule, Your Honor. And here we have undisputed facts in this case. Undisputed. Yeah, but we're not fact finders. And we never find facts or way facts. What the question is, the facts and the significance of the facts and the context of the facts are matters for the agency. And we give them enormous deference on their fact finding and overrule them. But here we have an agency said they don't want to defend. They want it to go back. And it gives you a chance to make the points that you have made. And you can even tell them you can put more evidence in, I suppose, if they request. If we get granted just a remand because both parties requested remand, shouldn't we review it then and not now? One legal answer and one human answer, Your Honor. In this case, when a board arbitrarily ignored substantial evidence, this court has reversed. Look at Tassie v. Holder. This court exactly held the same way. And also in this case, the Board of Immigration Appeals has found there was no nexus. And they were wrong in Perez-Vasquez v. Garland. This court has reversed the decision of the Board of Immigration Appeals. Not remand. Well, you know, without getting too far in all of it, this case has got some gaps in it, too. You know, there's no request to go to the government, to the police. And her motives were basically not aesthetic, and she didn't want to be associated with the gang. And the question is how that was taken. These are all nuanced facts. And I don't think we gain much in going into a fractured record or a thin record and then also remand when both parties have requested a remand. You want us to find error and remand to have a do-over, right? Your Honor, there's no fracture record in this case. This is a Board of Immigration Appeals decision in 1997. You do not need to go to the police if it's futile or if it's subject to want to further violence. Well, the evidence of futility was almost nil. No, but that's what the Board of Immigration Appeals and the IG said. They said, oh, you didn't go to the court, but it is not a requirement. From this court. You don't need to go to the court. No, you don't need to. But you're reading that in a too narrow a context. It always is a context because you have to have governmental persecution. And so the question is how you get there. And you can't just leave it open. You've got to try some facts. And we have said the failure to call police alone is not sufficient. But that doesn't answer the question. Here, Your Honor, they failed to take into account the broader political context of gang violence in El Salvador. We have submitted substantial evidence that shows, number one. I mean, the question is whether they acted in response to her because she was a member of some organization. Or was it individualized? In other words, she was not hostile to the took a political position against them. She did not want to be associated with them. And for that and aesthetic purposes, she wiped it off. She did it because it was against her value. She did it because she wanted to take a stand against the gang, Your Honor. That is the reason why she did it, Your Honor. And here, country-conditioned evidence are highly probative evidence in the country, in a foreign country. And here it says the government of El Salvador was not effective in combating violence. And the gang members controlled their neighbor. They controlled movement in the neighborhood. What else do we want, Your Honor? This poor lady couldn't go to the police. It was impossible at that time, Your Honor, to get any kind of help from the police. Therefore, she didn't go. And substantial evidence supports that. I believe, Your Honor, the Department of Justice should just confess her. There's nothing wrong with that. This poor lady has been in proceedings since 2014, Your Honor, about over eight years now. Over eight years. She was able to prove. She was credible. She proved nexus in a political opinion. And she was able to show in the government in her brief all the arguments we made, Your Honor. They were not pretty much even now going against our point. They're pretty much arguing we made. Why couldn't they just confess to error? They should just confess error. This has been going on for nine years. Nine years. Justice delayed is justice denied, Your Honor. And there are facts in this case that prove our client's case. Simple. They just would not confess to error. Here, nexus has been established. As per First Vazquez v. Barr. Because an asylum applicant need not show conclusively what persecution occurred in the past or likely to occur in the future. However, it must produce evidence to show that her was motivated, at least in part, by an imputer in the actual protected category. Here she has. She took against control of the gang in her neighborhood. And in Hernandez-Chacon v. Barr from the Second Circuit, they held exactly the same way. Taking a stand is an imputer political opinion. That's what she did in this case. So it's undisputed record here in this case, Your Honor, that she was against the gang. Forget about the political opinion because that's not what we're arguing. Imputer is from the perspective of the gang. That's what they said. They said, what we do, nobody gets it undone. That's the record, Your Honor. So sending this back to the BIA and to the IG. Well, the record's more complete. I mean, you know, it's not a good – Cherry picked the evidence. She said exactly what you said. But it was also she started paying rent to them or fees or extortion payments. There's no evidence that they painted their name back on the wall. The wall was clean. And so she paid, went on and started making payments. And that lasted for, I don't know, months. It's all a little more nuanced than that. Your Honor, I respectfully disagree. It's not nuanced. She had to pay the money because she was asked to do so. She was going to get killed if she didn't pay. So she paid $500, and she was required to do so. So everybody in El Salvador who pays rent to gang members, extortion members, can petition for asylum just on that basis? Your Honor, we never – My question is, if you just pay rent or pay an extortionary fee to a gang that controls the area, is that enough for asylum? Absolutely not. But that's not the facts of this case, Your Honor. That is not the facts of this case. Absolutely not. And by the way, paying extortion money is not mutually exclusive with an imputed political opinion claim. It is not, Your Honor. It is not. And the government knows that. It is not mutually exclusive. And that's not the point. The point is not about extortion payment or extortion at all here. It was an imputed political opinion claim in this case. And the government failed to rebut. Well, she was apparently living in some kind of peace with the gang after she cleaned it. And they came in and said, you don't undo what we did. But they didn't make her paint it back on or write back on the wall. They achieved a relationship where she paid rent and they left her alone. How can you – Your Honor, she's paying rent. She was told, if you don't pay rent, we're going to kill you. How is that peaceful? Well, that's extortion. How is that peaceful, Your Honor? That can't be peaceful if you are threatened with death. That's not peaceful, Your Honor. And then after that, she had to pay monthly rent, Your Honor. So how is that peaceful? That's not peace. That is extortion. That is threat. That is persecution, Your Honor. So in this case – Is that persecution because of her political position or is that persecution just to, like the mafia, is to collect money? No, it was persecution on account of her impudent political opinion for taking a stand against MS-13 gang. As a retribution, she was asked to pay rent. So it was two in one, just like in Cordova v. Holder, just because you have one does not exclude the other. So you could have two and that is fine. But in this case, there's no denial. Even the BIA said she disrespected the gang. And that is the reason why she had to pay. The disagreement with the BIA was they don't think that it goes far as to show an impudent political opinion. And we disagree because it does. Because the BIA even disagreed with the IJ. Your Honor, I'm sorry. My time is up. Okay, thank you. I think you have some rebuttal. Yes. All right, Ms. Leach. May it please the Court, Abigail Leach for the Attorney General. The Court should remand the incident case back to the Board for further clarification and analysis of its determinations and also to address this Court's intervening case precedent in the first instance. As an initial matter, remand is warranted for the Board to provide— Can you move your speaker over a microphone or just speak up a little bit? Is that better? Yeah, we're right across the room from you. Sorry about that. Thank you. Remand is warranted for the Board to provide further clarification and analysis of its determination that the erasure of the gang graffiti was not a political opinion and also for clarification that the gang did not impute a political opinion upon the petitioner. Where the record is unclear on the basis where the agency has made a finding, the appropriate remedy is to remand for further analysis and consideration. In so doing, the Board could be more explicit in the evidence it considers and also consider this Court's case law on the relevant issues. Similarly, because it's unclear how the Board analyzed and reviewed the nexus family-based claim, the Court should remand for further clarification on the analysis and also for consideration of intervening case law, including Perez-Vazquez and Toledo-Vazquez. Finally, petitioner concedes in his opening brief that remand is warranted for further analysis of the protection under Kat claim. If there's no questions, the government rests on the arguments made in its brief. Thank you. Mr. Canary? Sir, let me ask you two questions. Exactly what are you asking us to do? Is that to reverse and remand to the BIA with instructions to rule in her favor? That's the first question. The second question, are you abandoning your argument about the relationship? She's being persecuted because of the relationship with her mother. I'm sorry, I didn't hear the last part. She's being persecuted by her relationship with her mother. Are you abandoning that claim? To answer to your first question, we are asking this Court to reverse the decision of the BIA. Yes, we are. Because we believe that we have proven that her imputed political opinion and her family membership were on account, were the reasons why she was persecuted. Number two, we're not abandoning family membership because family membership constitutes a particular social group where there is a sufficiently strong and discernible bond between family members such that the family relationship becomes the foreseeable basis for persecution. And that's what we have in this case, Your Honor. Here, the mother was threatened. The two sisters were threatened with death. They went to the United States. They have a case pending. The last one, Rosalinda, also was threatened and was paying rent. And they asked her, by the way, where's your sister? We want all of you. They threatened to kidnap, rape, and kill them. And all three are in the United States. And the mother is in hiding. And the cousin has been killed. Your Honor, this is a typical family membership as well. And the BIA missed that. And the IG missed that as well. So here in this case, Your Honor, remand is not warranted. Reversal is. We have to find facts contrary to the factual findings. And we're not in a position to do that. We don't find facts. If we find an insufficient analysis that they didn't take into account certain facts, as you argue, we send it back to let them do that. But we're not a fact finder. And the standard for reversing on facts is one of the highest we have, isn't it? But the facts, Your Honor, the legal analysis, the conclusion, the legal conclusion is based on the facts. They completely ignore the facts here. Well, then the remand should be don't ignore the facts. Your Honor, how long are we going to do this? Another nine years, Your Honor? Justice denied. That's another issue. And that wasn't raised. I mean, these processes are not. Nine years. I don't know why it's nine years, what the sequence was. How come it was nine years? First of all, she. She entered without permission? That is correct. Okay, without examination. And when was she notified by the agency? 2014. To appear? Yes. And then what happened? She went to court, and the IJ denied the case. We appealed to the BIA. The BIA dismissed, and then we appealed. So it took that long. It was not our fault that it took this long. It's just this is the process. So we're going to remand again to the board. Is she in the United States now? Yes, she is. Well, why is she complaining about those nine years? She's lived here for nine years. Your Honor, that's not the point. The point is. No, the point is you said that she's as if. Sure, it needs to be resolved, but the process has been followed. Nobody has criticized the time delays and so forth. I haven't seen anybody lay out that somebody delayed or did it inappropriately. Number one. Number two, based on what the agency decided, she's ordered to go back. And so it seems to me you shouldn't be arguing time. Your Honor, we are not asking anything differently. This court has done in the past. Perez-Vasquez, Hernandez-Cartagena, Avalos-Lagos, Zavaleta-Policiano, Oliva v. Lynch, Hernandez-Avalos. We're not asking anything differently than this court already did before. So this court has reversed the decision of the BIA when they held that the applicant has not shown nexus, has not shown a particular social group. We're not asking anything differently, Your Honor. So by sending it back to the BIA for further analysis and explanation, Perez-Vasquez did not change the law, did not articulate any new precedent. As a matter of fact, Perez-Vasquez admonished the BIA, admonished the BIA for engaging in improper and excessively narrow interpretation of the nexus requirement. That's what this court held. So why sending it back again for remand? They should reverse the decision of the BIA. And with that, the court will find a solution to this matter, Your Honor. And what if we find the evidence ambiguous? I hope this court doesn't find that. Well, I understand that's your position, but the reason she gave for taking down that sign didn't sound like opposition to the political opposition. It sounded to me like she did not want to be associated with a gang because she was Christian, and she wanted aesthetically not to have that on her shop. But that was her testimony. Now, the question is you can explain the context more, but I'm just saying that could be ambiguous. Your Honor, that's what the testimony says. It shows, she says right there, I was taking a stand against them. Not erasing the sign was, for me, it's like being against God. That's what she said in the record. That's what the record indicates. What you're saying right now, Your Honor, is not in the record. That's what she said. Unless we require a confession now from the MS-13 gang members or the perpetrators, because I don't know what else can this petitioner do. That's what the record shows, Your Honor. So we're asking this court to reverse the decision of the BIA and not to remain for further analysis and explanation, Your Honor. All right. Thank you. All right. We would come down and greet counsel in the ordinary course, but we're following the protocols still. And the next time you come to court, I'm quite sure we'll come down and shake your hands and probably try to remember this proceeding too. Thank you very much. We'll proceed on to the next case.
judges: Paul V. Niemeyer, A. Marvin Quattlebaum Jr., Henry F. Floyd